Filed 6/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>DONNIE HOWARD,<br><br>    Defendant and Appellant. | A157285<br><br>(Alameda County<br>Super. Ct. No. H56262B) |

In 2010, an elderly woman was shot and killed during a burglary of her home. Three defendants, including Donnie Howard, were charged with murder. In 2015, a jury convicted Howard of first degree murder with a felony-murder special circumstance, and found he had been armed in the commission of the offense. The trial court sentenced Howard to life without the possibility of parole.

In our 2018 decision in Howard's prior appeal, we reversed the felony-murder special circumstance, concluding the evidence was insufficient to show Howard—who was not the actual killer—acted with reckless indifference to human life. (*People v. Howard* (May 30, 2018, A149081) [nonpub. opn.] (*Howard I*).)

When the case returned to the trial court, Howard moved to vacate his murder conviction and for resentencing pursuant to Penal Code section

1

1170.95, enacted effective January 1, 2019.[1]  (Stats. 2018, ch. 1015, § 4.)  As pertinent here, section 1170.95 outlines a process through which qualifying defendants can have their murder convictions vacated and be resentenced. (§ 1170.95, subds. (d)(1)–(d)(3).)  The statute provides that where the murder conviction was charged generically and the underlying felony was not charged, the trial court redesignates the "underlying felony for resentencing purposes."  (§ 1170.95, subd. (e).)

The parties agreed Howard's murder conviction should be vacated, and the court vacated it.  (§ 1170.95, subd. (d)(2).)  The parties also agreed the underlying felony was burglary, but they disagreed on the degree of the offense.  (§ 1170.95, subd. (e).)  Adopting the prosecution's interpretation of the statute, the court redesignated Howard's conviction as first degree burglary.  (§§ 459, 1170.95, subd. (e).)  It sentenced Howard to the aggravated six-year prison term for the burglary conviction, designated the offense a violent felony (§ 667.5, subd. (c)(21)), and imposed a one-year arming enhancement (§ 12022, subd. (a)(1)).

Howard appeals.  He contends the sentence for first degree burglary is unauthorized because it contravenes the plain language of section 1170.95 and violates his federal constitutional rights.  He also challenges the violent felony designation and the arming enhancement on similar grounds.

We affirm.  We conclude the court properly redesignated the underlying felony as first degree burglary pursuant to section 1170.95, subdivision (e) because the evidence at trial established—beyond dispute—that defendants burglarized a residence.  We also hold redesignating the conviction as first degree burglary did not violate Howard's federal constitutional rights.

---

[1] Undesignated statutory references are to the Penal Code.  We incorporate by reference our unpublished opinion in *Howard I.*

2

Finally, we conclude the court properly designated the offense a violent felony (§ 667.5, subd. (c)(21)) and imposed a one-year arming enhancement (§ 12022, subd. (a)(1)).

## FACTUAL AND PROCEDURAL BACKGROUND

The operative amended information charged Howard and two co-defendants, Ayodele Patterson and Lionel Harris, with first degree murder and alleged a special circumstance of burglary felony murder (§§ 187, subd. (a), 190.2, subd. (a)(17)(G)). The amended information alleged the murder was a serious felony (§ 1192.7, subd. (c)) and a violent felony (§ 667.5, subd. (c)). The amended information further alleged a principal was armed with a firearm during the offense (§ 12022, subd. (a)(1)), and that Howard had a prior burglary conviction and had suffered a prior prison term.

Harris pled no contest to voluntary manslaughter. Trial proceeded against Howard and Patterson.

### *Trial*

Howard and Harris had committed a burglary together. During that burglary, both men wore gloves.

In June 2010, June Pavon was 80 years old. She lived with her dog in a home in the Hayward Hills. The house had an attached garage; a stairway led from the garage to Pavon's kitchen. A side door to the garage had been broken during a burglary about month earlier. A sheet of plywood had been wedged in place of the door as a temporary fix.

On the day of the murder, Patterson invited Harris to come to his apartment. After Harris arrived, Patterson took a phone call in another room. Patterson came back and said he had a "lick on [the] line," meaning he wanted to burglarize a house. Patterson insisted Harris come along, and the two men left Patterson's apartment. Patterson had a sawed-off rifle sticking

3

out of the top of his pants.  He gave Harris a pair of blue gloves, which Harris put on.

Howard joined the two men.  He was wearing blue gloves.  As the three men walked toward Pavon's house, Patterson said there was a big dog at the house.  It was agreed Harris would be the lookout.  When the three men arrived at Pavon's house, they walked down an alleyway between the garage and a shed.  Howard and Patterson stopped at the side door to the garage, while Harris walked around to the backyard.  Harris saw Pavon in the kitchen.  He went around the corner to tell Howard and Patterson that someone was in the house.  When Harris returned, the side door to the garage was open.  Harris walked inside the garage and noticed the door leading from the stairs to the kitchen was also open.

Harris walked up the stairs and into Pavon's kitchen.  Patterson stood between the kitchen and the living room, holding his gun.  Patterson whispered to Harris that there was a lady in the living room and asked him what he wanted him to do.  Harris said they should come back when she was not there.  Patterson said, "Fuck that" and "We going to do this. . . .  I'm fitting to lay her down."  Patterson entered the living room and approached Pavon, who was sitting on her couch.  He shot Pavon in the chest, paused, then shot her three more times.

Patterson picked up shell casings and went through Pavon's belongings.  Harris was upset at Patterson for shooting Pavon; he left the house without going through her belongings.  Harris did not see Howard inside the house.  The last place he saw Howard was at the side door of the garage.

The next day, Pavon's daughter went to the house and found her mother's dead body on the living room couch.  The house had been ransacked.

The side door to the garage—which appeared to be the entry point—was damaged. That same day, Howard pawned a piece of gold jewelry at an Oakland pawn shop. The police interviewed Howard, who denied involvement. Police also interviewed Patterson, then placed the two men in a room together and recorded the conversation. During that conversation, Howard claimed he "wasn't there." A witness testified Howard was at her home on the evening Pavon was murdered, and that he spent the night.

*Closing Argument, Jury Instructions, Verdict*

During closing argument, the prosecutor described the incident as a "home invasion" and urged the jury to conclude the murder was committed during the commission of a burglary. Defense counsel conceded the victim was "murdered in her home" during a burglary but argued Howard "wasn't there."

The court instructed the jury on aiding and abetting, felony murder, and general burglary (CALCRIM No. 1700). The jury convicted Howard of first degree murder (§ 187) with a felony-murder special circumstance, finding Howard was engaged in the commission of the crime of burglary (§ 190.2, subd. (a)(17)(G)). The jury also found Howard had been armed with a firearm in the commission of the offense (§ 12022, subd. (a)(1)). The trial court determined Howard had a prior burglary conviction and sentenced him to life without the possibility of parole.

*Howard I*

Howard appealed. As relevant here, we concluded there was "ample evidence [Howard] aided and abetted a residential burglary." We noted the evidence presented by the prosecution supported an inference that Howard agreed in advance to commit the burglary with Patterson, accompanied him to the scene, forced open the door to the attached garage, and later pawned

5

jewelry that may have been taken from Pavon's house. We assumed, without deciding, that this evidence was sufficient to show Howard was a major participant in the burglary.

But we reversed the felony-murder special-circumstance allegation because we determined the evidence did not establish Howard acted with reckless indifference to human life. We also reversed the prior burglary conviction, concluding it was not adequately pled and proven. We modified Howard's sentence to 25 years to life for first degree murder. (*Howard I, supra,* A149081.)

*Section 1170.95 Petition*

On remand, Howard petitioned to vacate his murder conviction and for resentencing pursuant to section 1170.95. The parties agreed the murder conviction should be vacated, and the court granted the petition and vacated the conviction. (§ 1170.95, subd. (d)(2).)

When discussing the underlying felony for resentencing, the court observed "[t]he residential burglary wasn't pled and prove[n]" but that it was "charged at the preliminary hearing."[2] The court continued: "The jury was only instructed on general 459 burglary, not residential burglary. I heard the case. The facts were clear there was a residential burglary. I think it's fair that Mr. Howard isn't being saddled with the murder because he never participated. I heard the trial. The shooter [Patterson] shot impulsively. . . . It wasn't planned to be an execution. . . . Mr. Howard didn't

---

[2] In addition to murder, the original information alleged first degree burglary (§§ 459, 460) and a person present enhancement (§ 667.5, subd. (c)(21)). The court held Howard to answer the charges and the person present allegation. The amended information, however, did not charge burglary or allege a person present enhancement.

6

plan for [the victim] to be killed. On the other hand, he did obviously plan a residential burglary of an elderly lady in the middle of the night."

Defense counsel cautioned that resentencing Howard to residential burglary would punish him "for a crime that was neither pled nor proven" in violation of the federal constitution. According to defense counsel, the Legislature did not intend that when designating the underlying felony, the court "could be a fact finder . . . and impose a sentence for a crime neither pled nor proven."

The prosecutor urged the court to "go back and look at what the facts were, what crime was actually committed now that the crime can no longer be designated as a murder, and substitute a new offense for that murder." Referring to the "facts as they were proven at trial" and "accepted by the Court of Appeal," the prosecutor argued Howard committed first degree "residential burglary with a person present." Defense counsel countered: "[w]e don't have a system of justice where we supplant what actually occurred for what the government pleads and what an unanimous jury finds beyond a reasonable doubt. . . . [¶] . . . [¶] I can't believe the [L]egislature would allow a [defendant] to be punished and sentenced to a crime not proved."

The court noted that under the former felony-murder rule, "either a residential burglary or just a regular burglary would suffice. That's what the [prosecutor] was operating on" and "given notice of as to what [the prosecutor] could prove. [¶] [CALCRIM] 1700, the general 459 instruction, was given. [¶] If . . . a burglary had been charged and this had happened now, they would have been given a residential burglary instruction. They wouldn't have been given any regular burglary instruction because there was just absolutely no evidence of it."

7

The court designated the underlying felony as first degree residential burglary. It stated a second degree burglary designation would lack credibility and common sense, and "would cause an injustice" to the prosecution and the victim.

*Resentencing*

The prosecution recommended the court impose the aggravated term for first degree burglary, designate the offense as a serious and violent felony (§ 667.5, subd. (c)(21)), and impose the arming enhancement (§ 12022, subd. (a)(1)). Defense counsel reiterated his objections to the first degree burglary designation. Counsel urged the court not to impose the enhancements, contending the person present designation was not "pled and proven" and that section 1170.95 did not allow the court to impose enhancements. According to defense counsel, the statute "says that the crime and all the enhancements are vacated and the Court shall redesignate a new crime. It doesn't mention anything about enhancements. . . . I think the Court is bound by and can only do what [section] 1170.95 says it can do."

The court sentenced Howard to seven years in state prison. It imposed the aggravated term of six years for first degree residential burglary and designated the burglary as a violent felony (§ 667.5, subd. (c)(21)). The court imposed an additional one year for the arming enhancement (§ 12022, subd. (a)(1)).

DISCUSSION

I.

*Statutory Framework*

Section 1170.95 amended the felony-murder rule " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the

8

underlying felony who acted with reckless indifference to human life.' " (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) The statute declares " '[t]here is a need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides,' " that " '[i]t is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability,' " and that " '[r]eform is needed in California to limit convictions and subsequent sentencing so that the law . . . fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual.' " (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 931.) Section 1170.95 has been described as providing "ameliorative benefits" (*People v. Garcia* (2020) 46 Cal.App.5th 123, 182) and as "an act of lenity." (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156.) The statute does not "categorically provide a lesser punishment must apply in all cases." (*Martinez,* at p. 728.)

As relevant here, a defendant convicted of first degree felony murder may file a petition with the sentencing court to have the murder conviction vacated and to be resentenced. (§ 1170.95, subd. (a).) A petitioner is entitled to relief under section 1170.95 if three conditions are met: (1) the prosecution proceeded under a felony-murder theory; (2) the petitioner was convicted of first degree murder following a trial; and (3) the petitioner could not be convicted of first degree murder because of changes to section 188 or 189 made effective January 1, 2019. (§ 1170.95, subd. (a)(1)–(3).)

The trial court reviews the petition to determine whether the petitioner has made a prima facie showing he is entitled to relief. (§ 1170.95, subd. (c).) If the petitioner makes such a showing, the trial court must hold a hearing

9

"to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously [. . .] sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) "The parties may . . . stipulate that the petitioner is eligible to have his . . . murder conviction vacated and [is eligible] for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2).)

At the eligibility hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

If the "petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1170.95, subd. (e).)

## II.

### *The Court Properly Designated the Conviction as First Degree Burglary Pursuant to Section 1170.95, Subdivision (e)*

The parties agree Howard was entitled to have the murder conviction vacated pursuant to section 1170.95. They also agree the underlying felony for resentencing purposes is burglary. The parties, however, part ways on the degree of burglary. Howard argues the trial court was *required* to designate the conviction as second degree burglary—even if the evidence at trial showed a residential burglary—because he was not charged with first degree burglary, the jury was not instructed on that offense, and the jury did not reach a verdict on that charge.

The Attorney General contends the court properly designated the conviction as first degree burglary because the evidence at trial established, beyond any possible dispute, that the building was a residence, and because designating the conviction as residential burglary furthers the purpose of section 1170.95, which is to punish defendants commensurate with their culpability. In our view, the Attorney General has the better argument.

A.     Interpreting Section 1170.95, Subdivision (e)

The construction and interpretation of section 1170.95 is a question of law we consider de novo. Our task "is to ascertain the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin our inquiry by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] In doing so, however, we do not consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of

11

the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.] We must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend." (*People v. Mendoza* (2000) 23 Cal.4th 896, 907–908.)

We begin by looking at the words of the statute. The pertinent provision—section 1170.95, subdivision (e)—provides that when the petitioner is entitled to relief, and where "murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." Section 1170.95, subdivision (e) does not define "underlying felony," nor specify the process by which the court designates that felony.[3] In the felony murder context, the phrase "underlying felony" means the offense that was the basis for felony-murder liability at trial. "The statutory definition of first degree felony murder is . . . 'murder . . . committed in the perpetration of, or attempt to perpetuate [certain enumerated felonies including . . . burglary].' " (*People v. Clark* (2016) 63 Cal.4th 522, 615, brackets in original.)

The offense that was the basis for Howard's felony-murder liability at trial was the burglary of Pavon's residence. At trial, the prosecution established Patterson and Harris—with Howard's assistance—burglarized Pavon's house; during the home invasion, Patterson shot Pavon. Defense

---

[3] We agree with Howard that section 1170.95, subdivision (e) is not ambiguous. "Statutory language is ambiguous when it is susceptible to more than one reasonable interpretation." (*People v. Smith* (2002) 95 Cal.App.4th 283, 298.) The language in subdivision (e) is general, but it is not susceptible to more than one reasonable interpretation.

counsel conceded as much in his closing argument, by acknowledging Pavon was "murdered in her home" during a burglary. In our prior opinion, we determined there was "ample evidence [Howard] aided and abetted a residential burglary." (*Howard I*, *supra*, A149081.) At trial, the evidence was uncontroverted that the burglarized building was a residence. Therefore, the offense underlying Howard's felony-murder liability was first degree burglary. (§ 459.)

Howard posits a court "may have to examine" counsel's "arguments to determine precisely what the underlying felony was," while also suggesting the court may not look beyond the jury instructions and verdicts when redesignating the underlying felony. (See Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23.51(K)(2), pp. 23-161 to 23-162.) We do not delineate the scope of evidence the court may consider when designating the underlying felony pursuant to section 1170.95, subdivision (e) because that issue is not squarely before us.

In our view, the absence of a first degree burglary instruction and verdict did not preclude the court from redesignating Howard's conviction as first degree burglary, because the evidence at trial demonstrated beyond any dispute the building was a residence. As Howard acknowledges, the plain language of section 1170.95, subdivision (e) contemplates a situation where—as here—the underlying felony was not charged. It follows that where the underlying felony is not charged, there will be no jury instruction or verdict form. Additionally, we question the practicality of requiring a trial court to ignore evidence established at trial when designating the underlying felony pursuant to section 1170.95, subdivision (e). (*In re I.A.* (2020) 48 Cal.App.5th 767, 775 [examining evidence offered at contested adjudication to determine whether the juvenile court's section 1170.95

subdivision (e) finding was supported by sufficient evidence; suggesting a court cannot redesignate an offense "for which there is no support in the record"].)

To the extent Howard contends section 1170.95 subdivision (e) requires the trial court to designate the lesser degree of the underlying felony—even when the evidence at trial shows the commission of the greater degree—we disagree. Subdivision (e) states the court "redesignate[s] . . . the . . . underlying felony for resentencing purposes." (§ 1170.95, subd. (e).) It does not direct the court to impose the lesser degree of the felony offense. Had the Legislature intended to dictate such a result, "it easily could have done so." (*People v. Flores* (2020) 44 Cal.App.5th 985, 993 [declining to expand section 1170.95 to include offenses not mentioned in statute].) In construing a statute, "our office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.)

We are mindful that in construing section 1170.95, we cannot consider subdivision (e) in isolation. "Rules of statutory construction obligate us to read a statute, and its various subdivisions, as a cohesive whole." (*People v. Marcus* (2020) 45 Cal.App.5th 201, 213–214; *People v. Flores, supra,* 44 Cal.App.5th at p. 995.) Like the parties, we look to other subdivisions in the statute, specifically subdivision (d)(3), which concerns the determination of the petitioner's eligibility for statutory relief. Subdivision (d)(3) contains express language regarding the prosecution's burden to prove the petitioner is not entitled to relief. It also identifies the evidence the court

14

may consider when making an eligibility determination. (§ 1170.95, subd. (d)(3).) Subdivision (e) contains no such language. Reading subdivision (d)(3) and (e) together suggests the Legislature knew how to circumscribe the court's redesignation decisionmaking power and declined to do so. Comparing these provisions supports our conclusion that the Legislature intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e).

Moreover, our conclusion that section 1170.95 subdivision (e) did not require the trial court to redesignate Howard's conviction as second degree burglary is consistent with the statute's stated purpose, which is to "eliminate[] lengthy sentences which have been declared incommensurate with the culpability of defendants such as [Howard]," and instead punish a defendant according to his " 'own level of individual culpability.' " (*People v. Ramirez, supra,* 41 Cal.App.5th at pp. 933, 931.) By vacating Howard's murder conviction and designating that conviction as first degree burglary, the court calibrated Howard's punishment to his culpability for aiding and abetting a residential burglary. (*Ibid.*)

B.     No Violation of Section 1157

Next, and relying on section 1157, Howard contends the court was required to "fix the degree [of the conviction] at second degree." That statute provides that "[w]henever a defendant is convicted of a crime . . . which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

15

Section 1157 did not compel the court to designate Howard's conviction as second degree burglary. Howard was not charged with, nor convicted of, burglary. The question of the degree of burglary was not before the jury, so Howard was not " 'convicted of a crime . . . which is distinguished into degrees' within the meaning of section 1157." (*People v. Mendoza, supra,* 23 Cal.4th at p. 907.) The purpose of section 1157 is to " 'protect the defendant from the risk that the degree of the crime could be increased after the judgment.' " (*People v. Jones* (2014) 230 Cal.App.4th 373, 378.) There is no such risk here. The degree of Howard's crime has not been increased; instead, his murder conviction has been vacated pursuant to an ameliorative statute.

Moreover, applying section 1157 would produce an absurd and unjust result: it would bestow a windfall on Howard, by requiring the court to designate a conviction for a crime unsupported by the evidence at trial and incommensurate with Howard's culpability. "This result would be 'neither just nor fair' and would permit ' "form [to] triumph[ ] over substance." ' " (*People v. Mendoza, supra,* 23 Cal.4th at p. 911.)

C.     No *Apprendi* Violation

Third, Howard argues the court violated his federal constitutional rights to a jury trial and due process when it redesignated the conviction as first degree burglary. We disagree. The retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature "that does not implicate defendants' Sixth Amendment rights." (*People v. Anthony, supra,* 32 Cal.App.5th at p. 1156; *People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064 [retroactive application of Proposition 36, the Three Strikes Reform Act of 2012, is a legislative act of lenity that does not implicate Sixth Amendment rights].)

16

Here, the process by which a trial court redesignates the underlying felony pursuant to section 1170.95, subdivision (e) does not implicate Howard's constitutional jury trial right under *Apprendi v. New Jersey* (2000) 530 U.S. 466 or *Alleyne v. United States* (2013) 570 U.S. 99. The redesignation does not increase Howard's sentence. We reject Howard's argument that the residential burglary designation violated his constitutional due process rights.

III.

*The Court Properly Designated the First Degree Burglary Conviction as a Violent Felony and Imposed the Arming Enhancement*

At resentencing, the court designated the conviction as a violent felony (§ 667.5, subd. (c)(21)) and imposed a one-year arming enhancement (§ 12022, subd. (a)(1)). Howard challenges the violent felony designation, arguing section 1170.95 does not authorize a trial court to impose an enhancement that was not pled or proven. He also contends the arming enhancement is invalid. According to Howard, when the court vacated the murder conviction, it was required to vacate the arming enhancement attached to that conviction. Howard's claims require us to interpret the statute. Our review is de novo. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.)

As an initial matter, the parties dispute whether the court resentenced Howard pursuant to section 1170.95, subdivision (d)(1), or (d)(3). Howard claims he was resentenced pursuant to subdivision (d)(3), which states that when the prosecution fails to establish the petitioner is ineligible for relief, the murder "conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." The Attorney General argues Howard was resentenced pursuant to subdivision (d)(1), which directs the trial court to "vacate the murder conviction and to . . . resentence the petitioner on any

17

remaining counts in the same manner as if the petitioner had not been previously . . . sentenced, provided that the new sentence, if any, is not greater than the initial sentence."

We need not resolve this dispute, nor parse the subparts of section 1170.95, subdivision (d). We adopt the holistic view of the statute taken by Judge Couzens and Justice Bigelow, leading commentators on sentencing, that "[i]n granting relief" pursuant to section 1170.95, "the court is to vacate the underlying conviction and 'any allegations and enhancements attached to the conviction.' [Citation.] It seems the intent of the Legislature is to place the petitioner after resentencing in a situation where the murder and any related enhancements no longer exist." (Couzens et al., *supra,* Sentencing Cal. Crimes, ¶ 23.51(K)(2), p. 23-160.) When the court vacated Howard's murder conviction, the arming enhancement (§ 12022, subd. (a)(1)) attendant to that conviction was also vacated.

When the court redesignates the murder conviction as the underlying felony (§ 1170.95, subd. (e)), may the court impose enhancements relative to that felony? As discussed above, section 1170.95 subdivision (e) is silent with respect to how a court resentences a defendant after redesignating the underlying felony. Consistent with the legislative goal of placing Howard after resentencing in a situation where the murder and any related enhancements no longer exist, Howard's resentencing may not include count-specific enhancements *unless* the People establish them related to the underlying felony by evidence presented at the hearing on the section 1170.95 petition. Our conclusion finds support in the principle that "[t]o the extent the court is determining the sentence to impose after striking the murder conviction, the traditional latitude for sentencing hearings should be

allowed." (Couzens et al., *supra,* Sentencing Cal. Crimes, ¶ 23.51 (J)(2), p. 23-157.)

Here, the evidence proven at trial, and recited in *Howard I*, established beyond any possible dispute that there was another person, other than an accomplice, present in the residence during the burglary. (§ 667.5, subd. (c)(21).) That person was Pavon, who was murdered. The evidence proven at trial, and recited in our prior opinion, also established beyond any possible dispute that Patterson was armed with a rifle, which he used to kill Pavon. (§ 12022, subd. (a).) Howard does not argue otherwise. In our view, the violent felony designation and arming enhancement were proper because the evidence established those enhancements relative to the underlying felony, burglary.

When a court resentences a defendant pursuant to section 1170.95, the only limitation is the new sentence cannot be greater than the original sentence. (§ 1170.95, subd. (d)(1).) Howard's new sentence is not greater than his original sentence. Thus, it complies with section 1170.95, subdivision (d)(1). As stated above, the purpose of section 1170.95 is to punish a defendant commensurate with his individual culpability. Howard aided and abetted a residential burglary, during which his accomplice shot and killed an elderly woman. Designating Howard's burglary conviction a violent felony, and imposing the arming enhancement, furthers the purpose of the statute.

Howard points out that the violent felony designation was not alleged and proven at trial, and that the arming enhancement was not found true as to burglary, because the prosecution did not charge him with that offense. We agree. But section 1170.95, subdivision (e) contemplates a situation where the underlying felony is not charged, and the court redesignates the

19

offense.  By imposing the enhancements, the court was not, as Howard claims, "re-open[ing] the charging stage of the case."  The court was resentencing Howard pursuant to an ameliorative statute that authorized the court to resentence Howard "as if [he] had not been previously . . . sentenced." (§ 1170.95, subd. (d)(1).)

## DISPOSITION

The judgment is affirmed.

_____

Jones, P. J.

WE CONCUR:


_____

Simons, J.


_____

Needham, J.

A157285

Superior Court of Alameda County, Hon. Thomas C. Rogers

Tara Maria Mulay, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano and David H. Rose, Deputy Attorneys General, for Plaintiff and Respondent.